## NATIONAL SUGAR REFINING CO. OF NEW JERSEY v. TIETJEN & LANG DRY DOCK CO.

## BISON S. S. CORPORATION v. SAME.

District Court, E. D. New York. June 27, 1928.

Nos. 8776–10467.

Bigham, Englar & Jones and L. J. Matteson, all of New York City, for libelants.

Crowell & Rouse and E. C. Rouse, all of New York City, for respondent.

CAMPBELL, District Judge. On stipulation, the two above-entitled actions were tried together, and, as they arise out of the same occurrence, the first being for damages to cargo, the second for damages to the ship, but one opinion is required.

The Bison Steamship Corporation purchased the steamship Lake Geneva, which had formed part of the Shipping Board laid-up fleet at Jones' Point on the Hudson river, and the Tietjen & Lang Dry Dock Company, under several contracts, had been making repairs and installing an ash ejector at their yard at Hoboken, N. J., but had not fully completed the work when the Lake Geneva was taken from their yard to the dock of the libelant National Sugar Refining Company of New Jersey, at Yonkers, and on April 29, 1925, two of the workmen of said Tietjen & Lang Dry Dock Company were completing the work on the Lake Geneva, at Yonkers.

At the same time stevedores were engaged in loading on the Lake Geneva a cargo of sugar belonging to the libelant National Sugar Refining Company of New Jersey.

There were two holds on the Lake Geneva, one forward and one aft, but there were two hatches to the forward hold, Nos. 1 and 2, and at the time in question the loading was at both of said hatches. Hatch No. 2 was the after hatch leading to the forward hold.

The cargo at the place they were then loading was about halfway up the hold.

About 11:30 o'clock a. m., fire was discovered by certain of the stevedores loading at hatch No. 2, who gave the alarm, and all made their escape to the deck.

The Lake Geneva got a line of hose in operation, but had not made any appreciable headway in gaining control of the fire when a land fire company arrived, ordered out the steamer's line of hose, put in their own, and, in about two hours, extinguished the fire, which destroyed a considerable portion of the cargo and damaged a large portion.

The Lake Geneva also suffered damage.

The foregoing facts are undisputed, as are also the facts that at some time that day the employees of Tietjen & Lang Dry Dock Company used an acetylene torch in their work on the ship, and that they had the only torch on the ship, as such a torch formed no part of the equipment of the ship.

Libelant alleges that the fire was caused by sparks from such torch while it was being used in cutting for the installation of the ash ejector.

There was no cutting done in the watertight bulkhead between the forward hold and the fire room, but libelant contends that the sparks came through two holes in that bulkhead on the port side of the ship, one hole being over the other, the top hole being about twenty-one and a half inches below the deck above the forward hold, the lower hole about four inches below the upper, one hole being three-quarters of an inch in diameter, and the other hole being one and a half inches in diameter.

Through these holes had formerly passed smothering lines which it became necessary to move when the ash ejector was installed.

Libelant contends that these holes were open. The respondent contends that they were filled with asbestos.

That the torch was used by the respondent's workmen that morning is admitted, but they deny that they were using the torch for cutting and creating any sparks which could in any way have found their way through the said holes if open at the time the fire started or on that morning prior thereto.

The only one who says he saw the respondent's men using the burner in the fireroom near the time of the fire was Hyde, one of libelant's witnesses, a fireman on the Lake Geneva, who went to Green Bay, Wis., and did not remember the engineer of his watch. But I saw the witness and heard his testimony, and am convinced he is in error, at least, as to the day when he saw the burning he describes.

Libelant's witness Mathison fixed the time of the burning between 9 and 10 o'clock, and libelant's witness Keller, the first officer of the Lake Geneva, says he saw a torch used in an upper coal bunker about 10 a. m., and in this corroborates the respondent's witnesses.

The respondent's foreman and ship fitter and its burner both say that there was no burning or heating of any kind or heating of rivets for over an hour before the fire, and that at the time of the fire they were, and for an hour before that time had been, working in the fireroom replacing a manifold cover, and that there had been no burning done in replacing the manifold cover.

They also say that the only use to which the torch had been put that morning had been to heat rivets which were put through the skin of the ship, and caused no sparks, and in burning a hole through a deck beam for a hanger for the ash ejector.

I believe these men told the truth.

I thoroughly understand the burden that rests on any one using a torch where the sparks may come into contact with cargo. I also appreciate that the sparks from an acetylene burner will live for some time and find their way through a small aperture, but I do

not believe that sparks from burning through the beam for the hanger could have found their way into the cargo, even if that burning had been at the time, and in heating rivets there are no sparks.

I realize the position of these men, as I also realize the position of the stevedores, and all are interested. The general foreman of the stevedores was not far wrong when, referring to the stevedore witnesses, he said they were all his sons, for most of them were, and one was a son-in-law.

I do not believe the testimony of the stevedores who say they saw the sparks coming through the bulkhead, especially the one who said he had seen them for a short time before the fire broke out and made no outcry, and I certainly do not believe the one who said he did not smoke and was asked to place his hands on the table, because I saw his hands.

Sugar in bags is an inflammable cargo, and once a bag is ignited the fire would jump and spread with great rapidity.

Smoking in the hold would be a competent producing cause of the fire, and a much more reasonable one than sparks, from burning at some distance from the small holes in question, which found their way through the small holes and onto the cargo, and I believe that Joseph D. O'Hagan, the deckhand, nephew of the master and son of the secretary and treasurer and general manager of the owner of the Lake Geneva, told the truth in the statement in writing made by him on May 7, 1925, when he said: "Before the fire broke out in the cargo on that day, I noticed some of the stevedores smoking in the hold but did not report it at the time."

This was clearly an admission which it was against his interest to make, and I believe is entitled to great weight.

I am convinced that the holes in question were filled with asbestos at the time of the fire, and I believe that Mr. Helperin was honestly mistaken in his belief that the asbestos had been placed in those holes after the fire, because any scorching or discoloration of the asbestos would naturally have been on the cargo hold side of the bulkhead; but he reamed out the asbestos with his fingers from the fireroom side, and, as he says, some of it went through in the cargo side, and this would naturally have been the part that would have shown the effect of the fire.

The burden rests on the libelant to show by a fair preponderance of the evidence that the damage to cargo and ship was caused by the negligence of the respondent in allowing sparks from the torch to go through the bulkhead between the fire room and the cargo hold, and ignite the cargo. This they have failed to do.

Decrees may be presented dismissing the libels with costs to the respondent.